Bob Sprinkle City Finance Director Ocala
QUESTION:
Does s. 166.261, F. S., authorize municipalities to invest in the guaranteed portion of a Small Business Administration loan?
SUMMARY:
Unless legislatively clarified to the contrary, municipalities are authorized by the terms of s. 166.261, F. S., to invest surplus public funds in their possession or control in the guaranteed portions of United States Small Business Administration loans.
The City of Ocala and you, as the city's finance director, wish to know if investments in secondary participation United States Small Business Administration government guaranteed loans are authorized by s. 166.261, F. S. In part pertinent to your question, s. 166.261(1)(b) provides that the municipalities are required, by resolution, to invest and reinvest any surplus public funds in their control or possession in:
 [n]egotiable direct obligations of, or obligations the principal and interest of which are unconditionally guaranteed by, the United States Government at the then prevailing market price for such securities. (Emphasis supplied.)
The evident purpose of this statute is to ensure that municipal investment of surplus public funds has the unconditional guarantee of the United States Government. In 38 C.J.S. Guaranty s. 1 (1943), `guaranty' or `guarantee' is generally defined `as a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some contract or duty in case of the default of another person who, in the first instance, is liable for such payment or performance.' Black's Law Dictionary 833 (1968) defines `guaranty' as a `collateral agreement for performance of another's undertaking . . . . A promise to answer for payment of debt or performance of another's if person liable in first instance fails to make payment or perform obligation.' Black's defines `unconditional' as `not limited or affected by any condition.' Id. at 1964. In Rooks v. Shader, 384 So.2d 681, 683 (5 D.C.A. Fla., 1980), the Fifth District Court of Appeal stated that `[a] contract of guaranty may be absolute or it may be conditional. An absolute guaranty is a contract by which the creditor is promised that, if the debtor does not perform his obligations, the guarantor will perform. An absolute guarantor becomes liable immediately upon default by the debtor.' See also 30 Fla. Jur. Suretyship Guaranty s. 34 (1974), and 38 Am. Jur.2d Guaranty s. 21 (1968).
In order to determine whether `secondary participation' by municipalities in Small Business Administration loans fulfills the statutory requirements, the nature of the investment must be explicated. According to a pamphlet accompanying your request issued by the United States Small Business Administration (hereinafter SBA), `secondary participation' is an investmen by institutional or other investors in the guaranteed portion of an SBA loan to a small business. The participating lender makes a loan to a small business. Then an investor, in the instant situation a municipality, purchases, pursuant to a three-party Secondary Participation Guaranty Agreement (SBA Form 1084), the guaranteed portion of the loan. This `secondary participation' of SBA's guaranty loan program allows the participating lenders to `roll over' the guaranteed portion in the secondary market, making additional funds available to lend to small businesses. Only the portion of the loan which is guaranteed by the SBA is available for investment in the secondary market. Up to 90 percent of the loan may be guaranteed by SBA and thus available for `secondary participation' on the part of the investors. See 15 U.S.C.A. s. 636(a)(3) (1976). The SBA regulations make this requirement clear: `In guaranteed loans the exposure of SBA under guaranty may not exceed 90 percent of the unpaid balance and accrued interest.' 13 C.F.R. s. 120.2(b)(2). See also California Pacific Bank v. Small Business Administration, 557 F.2d 218 (9th Cir. 1977).
The `Secondary Participation Guaranty Agreement,' a three-party agreement, is contained in SBA Form 1084. This guaranty contains SBA's promise that, if the loan is not repaid in accordance with the terms of Form 1084, SBA or the originating lender will purchase the guaranteed portion of the loan, which is the maximum available to an investor in the secondary market. If the originating lender declines to repurchase the guaranteed portion of the loan, SBA will repurchase the loan without any condition, except that the investor did not participate in or at the time the investor purchased the `guaranteed interest' have knowledge of any negligence, fraud, or misrepresentation on the part of the originating lender. See paragraphs 8, 9, and 10 of SBA Form 1084. Paragraph 9 provides: `If Lender does not repurchase [the Guaranteed Interest] as above set forth, SBA shall purchase the Guaranteed Interest within thirty days after receipt of written notice from Holder [investor] of Lender's failure to repurchase the Guaranteed interest.' The guaranteed interest is defined in paragraph 8 of that form to include
 an amount equal to Holder's [investor's] pro rata share of the unpaid balance of principal and interest owed by Borrower as of the repurchase date, less Lender's servicing fee, plus an amount equal to the sum of Holder's [investor's] pro rata share of any repayments by Borrower unremitted by Lender to Holder and accrued interest thereon . . . . [Small Business Administration Form 1084]
An opinion of the General Counsel of the Small Business Administration concluded, since, among other things, the SBA is authorized by 15 U.S.C. § 636 (1979), to enter into loan guaranty agreements in which SBA can guarantee repayment of up to 90 percent of the outstanding balance, that `the obligation evidenced by a duly executed Secondary Participation Guaranty Agreement running from SBA to an innocent Holder, or to any subsequent innocent transferee, is a general obligation backed by the full faith and credit of the United States of America.' Also, an unpublished opinion of the Office of the Attorney General of the United States to the Administrator of the Small Business Administration, dated April 14, 1971, concluded that a guarantee of the SBA to private investors `would constitute general obligations of the United States secured by its full faith and credit.' The Attorney General's conclusion was based upon the reasoning that `[i]f there is statutory authority for the guaranties, absent specific language to the contrary such guaranties would constitute obligations of the United States as fully backed by its faith and credit as would be the case were those terms actually used.' Section 636 of 15 U.S.C. (1979), expressly authorizes the SBA to aid small business concerns through agreements to participate on an immediate or deferred basis as in these secondary market guaranteed loans. See also for comparison, AGO 074-257, in which it was determined that, if bonds of a foreign government are fully guaranteed by the United States Government, the State Board of Administration would be authorized by s. 215.47(1)(a), F. S., to invest in such obligations.
Therefore, based on the foregoing construction of applicable federal law and regulations by federal officials, and unless legislatively clarified to the contrary, I am of the opinion that the guarantee contained in Form 1084, as authorized by 15 U.S.C. § 363 (1979) and 13 C.F.R. s. 120.2(b)(2), is a general obligation and unconditional guarantee of the United States Government within the statutory investment requirements for municipal surplus funds contained in s. 166.261, F. S.
Prepared by: Craig Willis, Assistant Attorney General